**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-17-01648-001-TUC-RM (LAB) |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Kevin Ronnie Tungovia, | |
| Defendant. | |

Pending before the Court is Defendant Kevin Ronnie Tungovia's Motion to Suppress (Doc. 48), joined in by Defendant Michaela Denise Ventura (Doc. 50).[1] In their Motion, Defendants argue they were arrested without probable cause and that all evidence stemming from their arrests should therefore be suppressed. On February 1, 2018, Magistrate Judge Leslie A. Bowman held an evidentiary hearing (Doc. 61). On February 14, 2018, Judge Bowman issued a Report and Recommendation (Doc. 72), recommending that this Court deny the Motion to Suppress. Both Defendants filed an Objection (Docs. 78, 80). The Government filed a Consolidated Response (Doc. 93), and Defendant Tungovia filed a Reply (Doc. 96).

**I. Standard of Review**

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). The district judge must

---

[1] Defendants also filed a Joint Motion to Dismiss (Doc. 51), for which there is a Report and Recommendation pending (Doc. 83). That motion will be addressed in a separate order.

"make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." *Id.* The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition; *see also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

## II. Background

Defendants were arrested on October 19, 2017, at an immigration checkpoint located on State Route Highway 86 near Three Points, Arizona. (Doc. 1.) On October 25, 2017, they were both indicted for knowingly or recklessly transporting an illegal alien in furtherance of the alien's violation of law, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (a)(1)(B)(i), and with conspiracy to commit that offense, in violation of § 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii), and (a)(1)(B)(i). (Doc. 15.) They filed a Motion to Suppress on January 2, 2018, arguing they were arrested without probable cause and that all evidence obtained as a result of their arrests is inadmissible. (Docs. 48, 50.) The following recitation of facts is taken from Border Patrol Agent Luis Santiesteban's testimony at the evidentiary hearing.

Agent Santiesteban has been a Border Patrol agent for approximately 17 years, stationed in Tucson, Arizona, during that time. (Doc. 69 at 11.) He estimated he has worked the Highway 86 checkpoint over 100 times during his career. (*Id.*) He is fluent in Spanish. (*Id.* at 12.)

The Highway 86 checkpoint is located approximately 45 miles north of the international border between the United States and Mexico. (*Id.* at 12–13.) That road is

1    the only egress between Tucson and Ajo. (*Id.* at 13.) Agent Santiesteban was working
2    the graveyard shift at the checkpoint on October 19, 2017. (*Id.* at 12.) He was the only
3    agent assigned to primary inspection at around 2:30 a.m., when he observed a silver
4    minivan approach the checkpoint. (*Id.* at 12–13.)

5    There were three people in the vehicle: a male driver (Tungovia), a female
6    passenger (Ventura), and a male passenger in the backseat (the material witness). (*Id.* at
7    14.) Agent Santiesteban approached the vehicle, but before he asked any questions,
8    Defendants (apparently anticipating questions) began stating their answers. (*Id.* at 13–
9    14.) Agent Santiesteban asked the vehicle occupants in English to "[p]lease state your
10   citizenship." (*Id.* at 14.) Defendants responded that they are U.S. citizens. (*Id.*) The
11   material witness responded "yes" in a heavy accent that sounded more like "jes." (*Id.* at
12   14–15.) Agent Santiesteban asked the material witness the same question in Spanish, and
13   the material witness again responded "yes," although the question required a more
14   substantive response. (*Id.* at 15.) The material witness was seated straight up and failing
15   to make eye contact with Agent Santiesteban. (*Id.*) While Agent Santiesteban was
16   questioning the material witness, Defendants attempted to answer the questions on the
17   material witness's behalf by stating that the witness is a U.S. citizen. (*Id.* at 15–16.)
18   Agent Santiesteban asked them to stop. (*Id.* at 16.) Since Agent Santiesteban was unable
19   to establish whether or not the material witness is a U.S. citizen, he referred the vehicle to
20   secondary inspection "for further inspection of the [rear] passenger." (*Id.* at 16–17.)

21   Once the vehicle was in secondary inspection, Agent Santiesteban ran the license
22   plate and learned that the vehicle was properly registered out of Tucson, but not to the
23   vehicle's occupants. (*Id.* at 17, 51.) Agent Santiesteban returned to the vehicle and
24   continued to question the material witness regarding the witness's citizenship. (*Id.* at 17.)
25   Defendants attempted once more to answer the citizenship questions on the material
26   witness's behalf, so Agent Santiesteban removed the material witness from the vehicle.
27   (*Id.* at 17–18.) After removal of the material witness from the vehicle, one of the
28   Defendants told Agent Santiesteban they had picked the witness up by the "Coyote" and

that the witness had told them in English that he was a U.S. citizen. (*Id.* at 19.) Agent Santiesteban understood "Coyote" to refer to the Coyote Store, which is a known load-up point for undocumented aliens. (*Id.* at 24–25.)

Once outside the vehicle, Agent Santiesteban resumed questioning the material witness in Spanish. (*Id.* at 21.) The material witness responded in Spanish, giving his name and admitting that he is a Guatemalan citizen with no documents allowing him to be in the United States. (*Id.*) Agent Santiesteban then took the material witness into custody. (*Id.* at 22.) After securing the material witness, Agent Santiesteban returned to the vehicle and informed Defendants they were under arrest. (*Id.* at 25.)

In Agent Santiesteban's experience, several common alien smuggling tactics were present in this case. (*Id.* at 23.) It is common for the smugglers to answer on behalf of an undocumented alien. (*Id.*) It is also a tactic to instruct non-English-speaking aliens to answer "yes" to questions posed by Border Patrol agents because some agents tend to ask questions requiring a "yes" or "no" answer, such as, "Are you a U.S. citizen?" (*Id.*) To thwart this tactic, Agent Santiesteban personally asks people to state their citizenship because it requires more than a "yes" or "no" answer. (*Id.*) Undocumented aliens also tend to exhibit the same rigid posture, nerves, and failure to make eye contact with agents. (*Id.* at 24.)

Agent Santiesteban agreed that the vehicle was obeying all traffic laws; that he noticed no suspicious driving, furtive gestures, or attempts to flee or evade inspection; and that he had not received any information from other agents or people regarding the vehicle. (*Id.* at 27–28.) He agreed that the material witness was not trying to conceal himself although there were places in the vehicle where a person could hide. (*Id.* at 29–31.) He did not see a backpack or water bottle or notice any brush or other debris, which might indicate that the material witness had walked through the desert. (*Id.* at 65.)

Agent Santiesteban's original report was written on October 19, 2017. (*Id.* at 31.) He wrote an amended report on January 29, 2018. (*Id.* at 33.) Agent Santiesteban wrote his amended report after meeting with the Assistant United States Attorney ("AUSA")

and recounting the entire stop, answering questions that helped him recall information not contained in the original report. (*Id.* at 61, 70–71.) The AUSA did not tell him what to write. (*Id.* at 71.) The following information was included in the supplemental report but not the original report: the Coyote Store is a well-known smuggling location; the Defendants became nervous when referred to secondary inspection; the material witness's new, overlarge sweatshirt was a significant factor in arousing Agent Santiesteban's suspicion; and smugglers coach undocumented aliens to answer "yes" to questions posed by immigration authorities. (*Id.* at 53–54, 59–60, 62–63.)

**III. Discussion**

    **A. Moment of Arrest**

As a threshold matter, the parties dispute the point at which Defendants were arrested. In their Motion, Defendants did not explain at what point in the encounter their arrests occurred. On the assumption the arrests occurred when Agent Santiesteban explicitly informed the Defendants they were under arrest, the Government argued in its Supplemental Response that any evidence obtained prior to that cannot be suppressed because it was not obtained as a result of the arrest.[2] In their Supplemental Reply, Defendants argued for the first time that they were arrested at the moment Agent Santiesteban ordered the material witness out of the vehicle. They contend they were arrested because Agent Santiesteban testified during the evidentiary hearing that they were not free to leave at the time he removed the material witness from the vehicle.[3]

Generally, an arrest occurs when "a reasonable person would conclude that he was not free to leave after brief questioning." *Stevens v. Rose*, 298 F.3d 880, 883 (9th Cir. 2002) (quoting *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990)). Whether an arrest has occurred depends on the totality of the circumstances. *Id.* Relevant factors

---

    [2] This evidence includes the material witness's identity and citizenship; the Defendants' identities; certain statements made by the Defendants at the checkpoint; and certain observations made by agents at the checkpoint.

    [3] Neither Defendant asserts that Agent Santiesteban ever communicated they were not free to leave.

- 5 -

include "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual." *United States v. Redlightning*, 624 F.3d 1090, 1103 (9th Cir. 2010) (quoting *United States v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)). An officer's failure to explicitly tell a person that he or she is free to leave is not dispositive. *Id.* (citing *United States v. Orman*, 486 F.3d 1170, 1176 (9th Cir. 2007)).

Defendants argue there is no need to analyze whether a reasonable person would have felt free to leave because Agent Santiesteban testified during the evidentiary hearing that they were not free to leave. The determination, however, is made from the perspective of a reasonable person in the suspect's position. *Stevens*, 298 F.3d at 883. Moreover, temporary detention during a brief investigation does not equate to an arrest. *See, e.g.*, *Dunaway v. New York*, 442 U.S. 200, 210–11 (1979) (explaining that *Terry* stops are less intrusive than arrests and likening *Terry* stops to brief detentions at fixed checkpoints (citing *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976)); *United States v. Sowers*, 136 F.3d 24, 26–28 (1st Cir. 1998) (upholding district court's finding that defendants were not arrested although 30 minutes elapsed between vehicle stop and discovery of contraband, and one defendant was removed from the vehicle during that period).

Under the principles set forth above, the Court finds that Defendants were not arrested until Agent Santiesteban expressly informed them they were under arrest. There is no sign in the record that, prior to that point, Agent Santiesteban indicated Defendants were under arrest, used harsh or threatening language, confronted them with evidence of guilt, or used an excessive degree of pressure to detain them. In fact, the testimony indicates that Agent Santiesteban was satisfied that Defendants were U.S. citizens and had moved on to investigating the material witness. (*See* Doc. 69 at 16–17.) When the material witness failed to provide sufficient evidence of U.S. citizenship, Agent Santiesteban advised Defendant Tungovia "to move over to secondary inspection for

further inspection of the passenger." (*Id.*) Although Defendants make much of the fact they were not free to leave when the material witness was removed from the vehicle, that fact did not turn the encounter into an arrest. Their detention at that point was a byproduct of Agent Santiesteban's investigation of the material witness. *Cf. Sowers*, 136 F.3d at 28.

Additionally, the physical surroundings do not support a finding that Defendants were under arrest prior to being informed so by Agent Santiesteban. The Supreme Court has recognized that although referral to secondary inspection at a permanent checkpoint "may involve some annoyance, . . . the stops should not be frightening or offensive because of their public and relatively routine nature." *Martinez-Fuerte*, 428 U.S. at 560. Nor does the length of the stop—according to the parties, about 20 minutes—support a finding that Defendants were under arrest, especially given that the investigation was focused on the material witness. *Cf. Sowers*, 136 F.3d at 28; *see United States v. Sharpe*, 470 U.S. 675, 683–87 (1985) (rejecting a bright-line rule concerning when an investigative stop turns into an arrest and finding a 20-minute detention reasonable).

Defendants' objection regarding the time of arrest will be overruled.

### B. Probable Cause

An arrest is "the quintessential 'seizure of the person'" under the Fourth Amendment. *California v. Hodari D.*, 499 U.S. 621, 624 (1991). All arrests must be supported by probable cause. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (quoting *Dunaway*, 442 U.S. at 208). Probable cause "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)). The probable cause determination is objective, made based on the totality of the circumstances and without consideration of an officer's subjective motivations. *Arkansas v. Sullivan*, 532 U.S. 769, 771–72 (2001) (per curiam); *Velazquez v. City of Long Beach*, 793 F.3d 1010,

1018 (9th Cir. 2015). "[A] probable cause determination can be supported entirely by circumstantial evidence." *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007). Although "an officer need not have probable cause for every element of the offense . . . when specific intent is a required element of the offense, the arresting officer must have probable cause for that element in order to reasonably believe that a crime has occurred." *Reed v. Lieurance*, 863 F.3d 1196, 1205 (9th Cir. 2017) (quoting *Blankenhorn v. City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007)).

Defendants object to Judge Bowman's finding that Agent Santiesteban had probable cause to arrest. They emphasize that Agent Santiesteban needed probable cause to believe they acted with specific intent, i.e., that they transported the material witness with intent to help him unlawfully remain in the United States. The Motion and Objections center on that element.[4] After independent review of the record, the Court finds that Agent Santiesteban had probable cause to arrest Defendants based on the following facts: at primary inspection, the material witness repeatedly responded "yes" to citizenship questions that required a more substantive answer; at primary inspection, Defendants attempted to answer citizenship questions on the material witness's behalf once the witness failed to adequately respond, and Agent Santiesteban ordered them to stop; at secondary inspection, one Defendant informed Agent Santiesteban that the witness told Defendants in English that he is a U.S. citizen; at secondary inspection, Defendants attempted again to answer questions on behalf of the witness notwithstanding Agent Santiesteban's earlier order not to do so; and, at secondary inspection, the witness admitted in Spanish that he is a citizen of Guatemala (his first adequate answer). The foregoing facts allow a reasonable person to infer that the Defendants had the specific intent required for the charged offense. That is, a reasonable person could infer that Defendants lied about speaking English to the material witness and attempted to interfere with Agent Santiesteban's investigation of the witness because they were knowingly

---

[4] Defendants do not concede that any other elements of the offenses are satisfied.

- 8 -

transporting an undocumented alien and wanted to avoid apprehension.

First, Tungovia objects to Judge Bowman's finding that Defendants "interfered" with Agent Santiesteban's investigation by attempting to answer citizenship questions on behalf of the material witness. He points out that Agent Santiesteban did not describe Defendants' conduct as "interference" and argues their conduct actually weighs against the existence of probable cause because it shows their genuine belief that the material witness was indeed a U.S. citizen. However, a reasonable agent in the same circumstances would have had cause to be suspicious of the material witness's citizenship, given the witness's repeated failure to give an appropriate answer to substantive citizenship questions. Through that lens, it is more reasonable to interpret Defendants' conduct as an attempt to interfere with the investigation by diverting attention away from the material witness. His objection to this finding will be overruled.

Tungovia's second and third objections are to Judge Bowman's reliance on the vehicle registration, the time of day when the vehicle approached the checkpoint, and the location of the checkpoint. His objections are two-pronged. Tungovia argues it was error to rely on those facts because Agent Santiesteban never testified that he relied on them. Tungovia also argues that the facts are weak evidence of probable cause. The former argument is an incorrect application of the objective standard; although Agent Santiesteban never testified he relied on those facts, there is no dispute that he was aware of them. The probable cause analysis examines "'whether these historical facts, *viewed from the standpoint of an objectively reasonable police officer*, amount to' probable cause . . . ." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (emphasis added) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Therefore, it is proper to consider all facts known to Agent Santiesteban. *See United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975) (explaining that the probable cause analysis requires consideration of "*all* the facts known to the officers and . . . *all* the reasonable inferences that could be drawn by them before the arrest." (emphasis added)).[5] The latter argument (that the facts are

---

[5] There is voluminous case law explaining that courts must consider "all"

- 9 -

weak evidence of probable cause) is also unpersuasive. Viewed in isolation, each fact would not support probable cause. However, the Supreme Court has expressly warned against engaging in a "divide-and-conquer analysis" whereby each factor is viewed in isolation; the proper analysis requires consideration of "the whole picture." *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). The facts viewed as a whole support a finding of probable cause. Tungovia's second and third objections will be overruled.

Tungovia's fourth objection is to Judge Bowman's reliance on facts introduced in Agent Santiesteban's supplemental report, which was written after the filing of Defendant's Motion to Suppress.[6] Judge Bowman found that the amended report reflects poorly on Agent Santiesteban's credibility and so found the probative value of the additional facts to be low.[7] After independent review, the Court does not agree that *all* information added in the amended report should hold less weight or be discounted entirely. As the Government points out, the accuracy of some of that information depends on Agent Santiesteban's memory of the encounter (e.g., the material witness wore overlarge, new clothing) and, therefore, that information should hold less weight than information in the original report because he only recalled it months later. However, some of the information is a product of his 17 years of experience and, therefore, its accuracy is not properly judged based on his memory of the encounter (e.g., the Coyote is a known location for smuggling activity). It is proper to consider information falling into the latter category. As explained above, the Court finds that Agent Santiesteban had

---

facts known to the arresting officers. Tungovia fails to cite (and the Court could not find) a single case indicating that "all" is limited to what the arresting officers personally found suspicious.

[6] Specifically, Tungovia objects to reliance on the assertion that the Coyote store is a known pick-up spot for undocumented aliens.

[7] In its Response to Defendants' Objections, the Government appears to object to Judge Bowman's credibility finding. Tungovia argues the Court should find that objection waived. However, resolution of that issue is not necessary to resolve the pending Motion to Suppress.

- 10 -

probable cause even without considering the new information. The new information based on Agent Santiesteban's experience only strengthens the finding of probable cause. Accordingly, Tungovia's fourth objection will be overruled.[8]

Next, Tungovia objects to Judge Bowman's finding that Agent Santiesteban determined the material witness does not speak English and that the witness could not have, as Defendants claim, told Defendants in English that he is a U.S. citizen. Tungovia argues Agent Santiesteban did not make such a determination because he never directly asked whether the material witness speaks English. Although directly confirming that the material witness does not speak English would more clearly support probable cause, the facts as they are nevertheless support that finding. The material witness failed to give an appropriate response to citizenship questions posed in English, and once questioned outside the vehicle in Spanish he gave his first adequate response in Spanish, i.e., that he is a citizen of Guatemala. At that point, Agent Santiesteban had already been informed by one of the Defendants that the material witness spoke at least some English. It is a reasonable inference from these facts that the material witness does not speak English and that, accordingly, the Defendant had lied about the material witness's ability to speak English. This inference is especially valid in view of Defendants' prior attempts to answer citizenship questions posed to the material witness in English. Tungovia also takes issue with any suggestion that an inability to speak English is indicative of alienage. His argument ignores the full context of the checkpoint encounter and is therefore not persuasive. His fifth objection will be overruled.

Ventura objects that the facts relied upon by Judge Bowman amount to no more than a "hunch" that Defendants were knowingly transporting an undocumented alien. In so arguing, she takes the same "divide-and-conquer" approach as Tungovia. She attacks Judge Bowman's finding that Defendants "interfered" with Agent Santiesteban's investigation by suggesting how a more thorough investigation might have clearly

---

[8] Defendants also argue that Judge Bowman erred by finding there is no evidence the Government suborned perjury. The Court has independently reviewed the record and concludes that Judge Bowman's finding is correct.

revealed Defendants' intent in answering on the material witness's behalf.[9] Although true, that does not require a finding that probable cause was lacking. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1147 (9th Cir. 2012) (explaining that officers need not investigate further once probable cause is established (quoting *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003))). Next, Ventura attacks Judge Bowman's reliance on the vehicle registration and reputation of the Coyote store as an alien load-up location. As explained above, however, there was probable cause to arrest without reliance on those facts. Next, Ventura argues that it is improper to associate language with alienage and that the testimony establishes, at most, that the material witness was merely more fluent or comfortable speaking Spanish. She also argues that the agent's discovery of the material witness's citizenship has no bearing on whether Defendants knew the witness's citizenship. These arguments are unpersuasive because they fail to take into account the totality of the circumstances. Ventura's first objection will be overruled.

Ventura's second objection is that Judge Bowman conflated knowledge of alienage with intent to further the material witness's unlawful presence in this country. She argues the Government still has to show Defendants intended to help the material witness avoid apprehension by immigration authorities and suggests that no crime was committed because Defendants presented the material witness for inspection at the checkpoint. However, as explained above, there was probable cause to believe Defendants had the requisite intent for the offense based on the material witness's Guatemalan citizenship and apparent inability to speak English, one Defendant's assertion that the material witness claimed U.S. citizenship in English, and the Defendants' attempts to answer citizenship questions on the witness's behalf despite being ordered to not do so. Ventura's second objection will be overruled.

. . . .

. . . .

---

[9] Ventura argues that the "alleged fact" that Defendants answered questions on the material witness's behalf was not introduced until Agent Santiesteban's supplemental report. However, that fact was in the original report. (*See* Doc. 69 at 54.)

**IT IS ORDERED:**

1. Defendants' Objections (Docs. 78, 80) are **overruled**. The Report and Recommendation (Doc. 72) is **accepted and adopted in full**.

2. Defendants' Motion to Suppress (Doc. 48) is **denied**.

Dated this 3rd day of April, 2018.

_____
Honorable Rosemary Márquez
United States District Judge